ODFJELL ASA, Odfjell USA, Inc., Odfjell Seachem as, Jo Tankers as, Jo Tankers, BV, and Jo Tankers, Inc., Plaintiffs,

v.

CELANESE AG, Celanese, Ltd. and Millennium Petrochemicals, Inc., Defendants.

In the Matter of the Arbitration Between Celanese Ltd., Celanese Chemicals Europe GMBH, And Millennium Petrochemicals, Inc., Claimants,

and

Odfjell ASA, Odfjell Seachem as, Odfjell U.S.A., Inc., Jo Tankers as, Jo Tankers BV, and Jo Tankers, Inc., Respondents.

No. 04 CIV. 1758(JSR).

United States District Court, S.D. New York.

Aug. 8, 2005.

Matthew Phineas Previn, Paul Adam Engelmayer, Wilmer, Cutler & Pickering,

Richard L. Jarashow, McGuirewoods LLP, New York, NY, for Plaintiffs.

Gary William Dunn, Kasowitz, Benson, Torres & Friedman LLP, New York, NY, for Defendants/Claimants.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Pending before the Court is yet another in a series of disputes over the powers and responsibilities of an arbitration panel currently considering allegations of bid rigging in the parcel tanker shipping industry. Claimants move to compel Paul O'Brien, former general counsel and senior vice president of Stolt–Nielsen S.A., Stolt–Nielsen Transportation Group, BV, Stolt–Nielsen Transportation Group, Inc., and Stolt–Nielsen Transportation Group, Ltd. (collectively "Stolt") to testify before, and produce documents to, an arbitration panel presiding over an arbitration to which neither Stolt nor O'Brien are parties. Stolt has objected to O'Brien's testimony and document production on grounds of attorney-client privilege.[1] At issue are 32 questions that O'Brien declined to answer, and three documents that he declined to produce, even though the arbitration panel overruled Stolt's objections thereto. For the reasons that follow, the Court denies the motion and remands to the arbitration panel for further proceedings.

The background of the case is set forth in the Court's prior opinions. *See Odfjell ASA v. Celanese AG & In re the Arbitration Between Celanese Ltd., et al., and Odfjell ASA, et al.*, 2005 WL 106897, 2005 U.S. Dist. LEXIS 729 (S.D.N.Y. Jan. 18, 2005) (denying non-party Stolt's motion for confidentiality order and denying claimants' motion for contempt order for non-

---

1. Because Stolt's opposition papers to claimants' motion necessarily discuss the allegedly privileged information it seeks to protect, Stolt has also moved, with claimants' consent, to file under seal certain portions of its opposition papers. That motion is hereby granted.

compliance with arbitration panel's subpoena); *Odfjell Asa v. Celanese AG & In re the Arbitration Between Celanese Ltd., et al., and Odfjell ASA, et al.,* 348 F.Supp.2d 283 (S.D.N.Y.2004) ("December 18 Order") (granting claimants' motion to enforce arbitration subpoenas requiring Stolt to testify and produce documents before an arbitration panel and denying Stolt's motion to quash O'Brien subpoena); *Odfjell ASA v. Celanese AG,* 328 F.Supp.2d 505 (S.D.N.Y.2004) (denying claimants' motion to compel non-party to comply with two subpoenas duces tecum issued by the arbitration panel because § 7 of the Federal Arbitration Act does not provide arbitrators with the power to compel pre-hearing depositions or pre-hearing document production from a non-party); and *Odfjell ASA v. Celanese AG,* 2004 WL 1574728, 2004 U.S. Dist. LEXIS 13151 (S.D.N.Y. July 14, 2004) (denying motion to stay arbitration pending Second Circuit review of a decision by the District of Connecticut denying respondents' motion for arbitration in a related case).

The instant motion stems from the Court's December 18 Order, in which the Court granted claimants' motion to enforce the arbitration panel's subpoena of Stolt to appear before the arbitration panel, testify, and produce documents, and denied Stolt's corresponding motion to quash the subpoena of Mr. O'Brien to do the same. *Odfjell,* 348 F.Supp.2d at 284–85. The Court concluded that the subpoenas conformed to § 7 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 7, which allows arbitrators to "summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." *Id.* at 286–87. As part of this ruling, the Court determined that Stolt's reliance on attorney-client privilege in moving to quash the O'Brien subpoena was "unripe" because "objections on the grounds of privilege and the like should first be heard and determined by the arbitrator before whom the subpoena is returnable." *Id.* at 288.

Following the December 18 Order, the arbitration panel held a hearing on December 21, 2004, at which Mr. O'Brien appeared to testify and produce documents. *See* Transcript of December 21, 2004 Arbitration Panel Hearing, December 21, 2004 ("Tr."), attached as Ex. 4 to Declaration of Gary W. Dunn, May 27, 2005 ("May Dunn Decl."), at 33–36, 42. In response to general questions about his background, Mr. O'Brien stated that he joined Stolt as assistant general counsel in 1991 and was promoted in 1999 to the position of senior vice-president and general counsel in 1999. *Id.* at 34–35. After this initial testimony, Stolt's counsel stated to Mr. O'Brien: "[G]iven those positions and consistent with earlier communications that Stolt–Nielsen and its counsel has directed to you and your counsel, Stolt–Nielsen instructs you to assert the attorney-client privilege and not waive it to the fullest extent possible." *Id.* at 35.[2]

2. Mr. O'Brien resigned from Stolt in March of 2002, and, in June of 2002, brought suit against Stolt and its former chairman in Connecticut state court, alleging that he was constructively discharged because Stolt was involved in criminal activities. *See* Complaint, June 18, 2002 ("O'Brien Compl."), attached as Ex. 5 to May Dunn Decl., ¶¶ 17–18. In that case, the court granted Stolt's motion to seal several affidavits, memoranda, and exhibits on the ground that they were protected by attorney-client privilege as set forth in New York's code of professional ethics. Memorandum of Decision of Connecticut Superior Court, Jan. 30, 2004 ("Jan.Conn.Mem."), attached as Ex. 3 to Declaration of Peter J. Carney, June 17, 2005 ("Carney Decl."), at 10; Memorandum of Decision of Connecticut Superior Court, July 30, 2004 ("July Conn. Mem."), attached as Ex. 5 to Carney Decl.

Stolt's counsel asserted attorney-client privilege at numerous other points during the December 21 proceeding. *See, e.g.,* Testimony of Paul E. O'Brien at December 21, 2004 Hearing, May 27, 2005 ("Question Table"), attached as Ex. 3 to May Dunn. Decl. (tabulating 32 questions posed by claimants to O'Brien, instructions not to answer by Stolt, and rulings by the arbitration panel from transcript of December 21, 2004 hearing; items from Question Table will be identified by "Question No."). Although the arbitration panel did sustain a number of Stolt's objections on the ground that the testimony concerned privileged conversations that occurred during the time that Mr. O'Brien was employed by Stolt, *see, e.g.,* Tr. at 128–29, most of the objections relating to other testimony were overruled. *See, e.g.,* Question No. 1 & Tr. at 76–78 (overruling objection to testimony on conversations that occurred after Mr. O'Brien's employment ceased); Question No. 29 & Tr. at 134–38 (overruling objection to testimony on what O'Brien described as part of his non-legal responsibilities). *See generally* Question Table.

Despite the panel's rulings, Mr. O'Brien refused to answer 32 questions that the panel directed that he answer, in part because of the possibility of disciplinary action raised by Stolt's counsel. *See, e.g.,* Tr. at 80–81 (Stolt's counsel stating: "if he answers in defiance of my instruction he is at peril with respect to disciplinary committees and other remedies that may be available to a lawyer who fails to preserve confidences and secrets of a former client."); *id.* at 77 (O'Brien's counsel stating: "consistent with Mr. O'Brien's ethical responsibilities, without conceding a privilege, I have to instruct him not to respond to the question."); *id.* at 82 (O'Brien stating: "While disputing the application of attorney-client privileged conversation, Your Honor, I trust that you understand I have no choice at the time being but to abide by this instruction."). *See generally* Question Table (listing all 32 questions that O'Brien refused to answer).[3]

Stolt's counsel also objected to Mr. O'Brien's production of 14 documents on the ground that they were privileged or contained privileged information. *See* Stolt–Nielsen's Privilege Log for Documents Identified by Paul E. O'Brien as Responsive to Celanese Subpoena, undated ("Privilege Log"), attached as Ex. 17 to May Dunn Decl. The arbitration panel reviewed the documents *in camera* and ruled that three of them were not privileged because, according to O'Brien testimony, they related solely to business advice. Tr. at 165–69. However, Stolt directed Mr. O'Brien not to produce the three permitted documents, in addition to the 11 privileged ones. *Id.* at 169.

■ Claimants subsequently moved this Court to compel Mr. O'Brien to answer the 32 challenged questions and to produce the three challenged documents. Opposing this motion, Stolt first argues that the December 21 hearing was improper under the terms of the December 18 Order because it was actually a discovery expedition rather than an evidentiary hearing. However, the December 21 hearing was clearly proper under the standard set forth by the December 18 Order, inasmuch as the panel heard testimony and received documents, considered the authenticity of testimony and documents, and considered

**3.** Stolt contends that Mr. O'Brien did, in fact, answer two of these questions, Question Nos. 11 and 25. Both of these questions were about why Mr. O'Brien believed that particular testimony was not privileged and the only response Mr. O'Brien gave was that he was not working for Stolt at the time of the events about which he was testifying. *See* Tr. at 98–100, 122.

questions of privilege. It is true, as Stolt argues, that the panel never ruled on authenticity or admissibility. *See id.* at 182–83 ("The evidentiary use that would be made of any of these documents is yet to be determined."). But this is primarily because Stolt's objections precluded almost all substantive testimony. As such, the hearing was effectively a proceeding to decide issues of privilege, which was contemplated by the December 18 Order. Questioning the validity of the hearing amounts to a "poorly disguised effort to reopen and reargue ... [an] earlier unsuccessful motion." *State of New York v. Nuclear Regulatory Comm'n,* 550 F.2d 745, 758 (2d Cir.1977).

Both Stolt and claimants also request that the Court defer ruling on certain aspects of this motion, although in different ways. Stolt requests that the Court defer ruling on the entire motion until the Second Circuit Court of Appeals rules on its appeal of the December 18 Order. However, this Court already denied a motion by Stolt to stay the December 18 Order, finding that Stolt had "failed to demonstrate a substantial possibility of success on appeal." *Odfjell,* 348 F.Supp.2d at 288. Because Stolt has failed to present any new evidence or argument that there is a substantial possibility of success on appeal, Stolt's request to stay the instant matter is denied.

■ For their part, claimants argue that the Court should defer a substantive review of the arbitration panel's privilege rulings until the confirmation process. The Second Circuit has held that "a district court should not hold itself open as an appellate tribunal during an ongoing arbitration proceeding, since applications for interlocutory relief result only in a waste of time, the interruption of the arbitration proceeding, and ... delaying tactics in a proceeding that is supposed to produce a speedy decision." *Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411, 414 (2d Cir. 1980) (internal quotation marks omitted). However, it is possible for courts to hear interlocutory appeals on some issues under the collateral order doctrine, *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and the same considerations that there operate warrant review here.

■ "To come within the 'small class' of decisions excepted from the final-judgment rule by *Cohen,* the order must [ (1) ] conclusively determine the disputed question, [ (2) ] resolve an important issue completely separate from the merits of the action, and [ (3) ] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). Although orders to disclose information are typically not deemed appealable because "appellate review in subsequent contempt proceedings, however risky[,] is available to one ordered to disclose who refuses to do so," *Republic Gear Co. v. Borg–Warner Corp.,* 381 F.2d 551, 554 (2d Cir.1967), "when a person has been subpoenaed to produce documents that are the property of a third party who claims that the material is immune from production, the third party has been permitted to appeal because it is unlikely that the witness would risk a contempt citation in order to create an opportunity for review of the third party's claim of privilege." *In re Subpoenas to Local 478, International Union of Operating Engineers and Benefit Funds,* 708 F.2d 65, 69 (2d Cir.1983).

Accordingly, because the ruling by the arbitration panel to allow Mr. O'Brien to answer certain questions and produce certain documents conclusively determined the privilege issue; because the alleged privilege is a separate issue from the merits of the arbitration; and because, as a

non-party attempting to prevent a witness hostile to it from providing testimony and documents, Stolt is effectively unable to appeal the issue after the arbitration is complete, the Court will consider the substantive question of privilege at this stage of the arbitration proceeding.

Resolution of this question turns in part on whether the Court considers declarations submitted by Stolt to the Court in support of its claim of privilege although these declarations were never considered by the panel. Whether the Court considers these declarations makes a difference in the outcome of the instant motion inasmuch as the declarations directly contradict Mr. O'Brien's contention that the subject matter of some of the disputed questions was not privileged because it referred to events that occurred after he had left Stolt. *E.g., compare* Tr. at 153 (O'Brien testifying that he met Per Voie around Christmas 2002) & Question No. 32 (Tr. at 154) (inquiring about details of conversation with Voie) *with* Declaration of Per Voie, June 9, 2005 ("Voie Decl."), attached as Ex. 12 to Carney Decl., ¶ 4 (stating that Voie did not see O'Brien after March 2002). Other declarations contradict, though less directly, Mr. O'Brien's contention that certain questions relate to events that implicated only his non-legal responsibilities at Stolt. *E.g., compare* Tr. at 134 (O'Brien stating that he was acting as director of projects and not as general counsel during a meeting about which a question was posed) *with* Declaration of Andrew Pickering, June 14, 2005 ("Pickering Decl."), attached as Ex. 9 to Carney Decl., ¶ 8 ("I do not recall any occasion where O'Brien indicated to me that he was acting only as a business person and not as a lawyer."). Several of the declarations also purport to add context to the three disputed documents showing that they are, in fact, privileged. *E.g.,* Pickering Decl. ¶ 5 & Ex. B.

■ Yet Stolt has submitted no authority for the proposition that this Court, in deciding whether or not to compel a third party to adhere to a ruling of an arbitration panel, should not only consider *de novo* the underlying issue on which the arbitration panel has ruled but also should make that determination based on materials that were not presented to the arbitration panel. If anyone is to consider the newly submitted evidence in the first instance, it should be the arbitration panel. The question then becomes whether the arbitration panel abused its discretion in not allowing Stolt to submit papers regarding the scope or applicability of attorney-client privilege, including such supporting factual material as the declarations here submitted.

Stolt maintains that the panel arbitrarily prohibited it from doing so. Claimants respond that the panel correctly refused Stolt's request to submit papers because Stolt only made the request at the start of the December 21 hearing. Yet while Stolt was aware of the Court's decision that the arbitration panel would hear the privilege question in the first instance three days before the December 21 hearing, and could in theory have made an earlier request in writing, Stolt's counsel could reasonably have believed that the arbitration panel would allow Stolt to submit full papers on the issue of privilege, given the focus in the December 18 Order on letting the arbitration panel decide that issue in the first instance. *See Odfjell,* 348 F.Supp.2d at 287–88.

■ "The law is clear in this circuit that a person claiming the attorney-client privilege has the burden of establishing all the essential elements thereof." *von Bulow v. von Bulow,* 811 F.2d 136, 146 (2d Cir.1987). This burden rests on the assumption that the party claiming privilege

has the opportunity to bring forward evidence to satisfy its burden. It therefore is crucial to allow information relevant to establishing a privilege to be considered, since a party ordered to disclose privileged material "will lose the privilege and will be unable to recoup the benefit of it on appeal." *In re Long Island Lighting Co.*, 129 F.3d 268, 271 (2d Cir.1997). Even in the informal setting of an arbitration proceeding, denial of such an opportunity is tantamount to a denial of elementary fairness. *Cf.* § 10(a)(3) of the FAA, 9 U.S.C. § 10(a)(3) (a district court may vacate an arbitration award where the arbitrator "refus[ed] to hear evidence pertinent and material to the controversy...."). Accordingly, the arbitration panel abused its discretion in not allowing Stolt to present the kind of papers Stolt has proffered here before the panel made its final rulings on the issue of privilege.

For the foregoing reasons, the Court denies claimants' motion and remands to the arbitration panel for further proceedings consistent with this opinion.

SO ORDERED.